AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-2018)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  MJ21-206 |
| A hotel room and a vehicle, as more fully described in Attachments A1 and A2 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
The locations more fully described in Attachments A1 and A2, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841(a)(1), 841(b)(1) and 846 | Distribution of and possession with intent to distribute controlled substances, conspiracy to commit these offenses |
| 21 USC § 843 | Use of communications facilities to facilitate drug trafficking |

The application is based on these facts:

✓   See attached affidavit of FBI Special Agent Shawna McCann.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means, or ☐ telephonically recorded.

_____
*Applicant's signature*

Shawna McCann, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 04/07/2021 _____

_____
*Judge's signature*

City and state:  Seattle, Washington

Mary Alice Theiler, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT OF SHAWNA MCCANN**

STATE OF WASHINGTON )
　　　　　　　　　　　　　 )　　ss
COUNTY OF KING 　　　　 )

I, Shawna McCann, a Special Agent with the Federal Bureau of Investigation, Seattle, Washington, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.　　I am employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been employed with the FBI since September 2017. I am currently assigned to the Seattle Field Division where I am a member of the violent crime, gang, and Transnational Organized Crime – Western Hemisphere squad. In this capacity, I investigate, *inter alia*, violations of the Controlled Substance Act, Title 21, United States Code, Section 801 *et seq.*, and related offenses. I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 400 hours of classroom training including, but not limited to, drug identification, drug interdiction, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, manufacturing, and trafficking of controlled substances.

2.　　In my role as a Special Agent for the FBI, I have participated in narcotics investigations (e.g., heroin, cocaine, marijuana, and methamphetamine) that have resulted in the arrest of individuals and the seizure of illicit narcotics and/or narcotics-related evidence and the forfeiture of narcotics-related assets. I have been involved in the service of federal and state search warrants as part of these investigations. I have encountered and have become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by various traffickers in their efforts to import, export, conceal, and distribute controlled substances. I am also familiar with the manner in which drug traffickers use telephones, often cellular telephones, to conduct their unlawful operations,

AFFIDAVIT OF SHAWNA MCCANN – 1
USAO #2019R01083

and how they code their conversations to disguise their unlawful activities. I am also familiar with the various methods of packaging, delivering, transferring, and laundering drug proceeds. Additionally, through my training and experience, I can identify illegal drugs by sight, odor, and texture.

3.      I have also worked on drug investigations involving the use of court-authorized wiretaps under Title III. In that capacity, I have had the opportunity to monitor, listen to, and review transcripts and line sheets (prepared by linguists) documenting the content of hundreds of intercepted conversations involving the trafficking of cocaine, methamphetamine, heroin, and other narcotics, by persons who used some form of code to attempt to thwart law enforcement detection. I have also interviewed defendants at the time of their arrest and have debriefed, spoken with, and/or interviewed numerous drug dealers or confidential sources (informants) at proffer and field interviews who were experienced in speaking in coded conversation over the telephone. From these interviews, and also from discussions with other experienced agents, I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of firearms to protect their narcotics-related activities and of cellular telephones and other electronic means to facilitate communications while avoiding law enforcement scrutiny.

4.      I have written affidavits in support of court-authorized federal warrants and orders in the Western District of Washington for GPS tracking of telephones, Pen Register/Trap and Trace, and search warrants. Additionally, I have testified in grand jury proceedings, written investigative reports, and conducted and participated in numerous interviews of drug traffickers of various roles within drug organizations, which has provided me with a greater understanding of the methods by which drug trafficking organizations operate.

5.      I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). As such, I am empowered to conduct investigations

AFFIDAVIT OF SHAWNA MCCANN – 2
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  of, and to make arrests for, violations of the Controlled Substance Act, Title 21, United

2  States Code, Section 801 *et seq.*, and related offenses.

3  **PURPOSE OF THE AFFIDAVIT**

4  6.   As described herein, there is probable cause to believe that the following

5  offenses have been committed, and are being committed, by Jerrell Ingram aka Rel.

6  a.   Distribution of, and possession with intent to distribute, controlled

7  substances, and conspiracy to commit these offenses, in violation of Title 21,

8  United States Code, Sections 841(a)(1), 841(b)(1), and 846; and

9  b.   Use of communication facilities to commit, facilitate, or further an

10  act or acts which constitute a felony in violation of Title 21, United States Code,

11  Section 843(b).

12  7.   I make this Affidavit in support of an application for warrants authorizing

13  searches of the subject location and vehicle,[1] which are further described below and in

14  Attachments A1 and A2 (attached hereto and incorporated by reference as if fully set

15  forth herein), for evidence, fruits, and instrumentalities, as further described in

16  Attachment B (attached hereto and incorporated by reference as if fully set forth herein),

17  of violations of the above-listed statutes, committed by the subjects listed above, and

18  others, as described herein.

19  8.   For each of the following locations, I request that authority to search extend

20  to all containers, compartments, or safes located on the property, whether locked or not,

21  where the items described in Attachment B (list of items to be seized) could be found.

22  For the vehicle, I request that authority to search extend to all parts of the vehicle and any

23  cases, containers, compartments, or safes located in the vehicle, whether locked or not,

24  where the items described in Attachment B (list of items to be seized) could be found.

25  Additionally, I know based on my training and experience that drug traffickers have been

26  known to use vehicles with hidden compartments. For this reason, I am requesting that if

27

28  _____

[1] The residence and vehicle to be searched are highlighted in bold font in this affidavit.

AFFIDAVIT OF SHAWNA MCCANN – 3
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   agents are unable to thoroughly search or access a particular area of a vehicle at the

2   location where the vehicle is found, the vehicle may be transported to another location

3   where they would have at their disposal the appropriate tools and equipment to properly

4   search the vehicle, and the search may continue at that location.

5        9.      I am seeking warrants for the following subject location and subject

6   vehicle, to search for and seize the items described in Attachment B:

7                a.      Days Inn Hotel, Room 220, 19015 International Boulevard S,

8        SeaTac, Washington (**Subject Premises 52**), as further described in

9        Attachment A1. Jerrell Ingram was staying at this location and was arrested

10       leaving this location; and

11               b.      A blue Dodge Grand Caravan bearing Washington license plate

12       BQJ5361 registered to Cecilia A. Turner at Subject Premises 22 (**Subject**

13       **Vehicle 51**), as further described in Attachment A2. Jerrell Ingram uses this

14       vehicle.

15                        **SOURCES OF INFORMATION**

16       10.     I have obtained the facts set forth in this Affidavit through my personal

17   participation in the investigation described below; from my review of intercepted calls to

18   date; from oral and written reports of other law enforcement officers; from records,

19   documents, and other evidence obtained during this investigation; and from confidential

20   sources who are associated with and knowledgeable about the subjects of this

21   investigation. I have obtained and read official reports prepared by various law

22   enforcement officers participating in this and other investigations. I have not included

23   every fact known concerning this investigation. I have set forth the facts that I believe are

24   necessary for a fair determination of probable cause for the requested search warrants.

25   During this investigation, investigators have made use of numerous investigative

26   techniques, including but not limited to making controlled purchases of controlled

27   substances; executing search warrants; seizing drugs and drug proceeds; conducting

28   video and physical surveillance; and conducting a financial investigation.

AFFIDAVIT OF SHAWNA MCCANN – 4
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.     When I refer to vehicle ownership or driver's licenses in this Affidavit, I have reviewed the relevant state vehicle records from the Washington State Department of Licensing, or the equivalent agency in other states or countries. When I refer to the criminal history of a subject, I have read the available criminal history from state or federal agencies. When I refer to telephone subscription records, I have read the subscriber records obtained from the telephone company by administrative subpoena or court order, or I have obtained the information from other law enforcement officers familiar with this investigation. When I refer to telephone toll records, I have received the information from the telephone company pursuant to an administrative subpoena or court-authorized pen registers. When I refer to customer information regarding utilities, power, or vehicle rentals, I obtained this information pursuant to an administrative subpoena. When I refer to GPS data for telephones, that data was obtained pursuant to court authorization, granted in the Western District of Washington.

12.     During the course of this investigation, we have obtained authorization in the Western District of Washington to intercept wire communication over multiple target telephones, including but not limited to the telephones summarized in the following table:

| Target Telephone | User | Date of Order | Date Ended |
|---|---|---|---|
| TT6 – (206) 393-7387 | Kevin Gipson | July 9, 2020 | August 7, 2020 |
| TT7 – (206) 409-2826 | Stevie Allen | July 9, 2020 | August 7, 2020 |
| TT8 – (425) 496-0964 | Michael Walker | July 9, 2020 | August 7, 2020 |
| TT12 – (206) 939-8973 | Jerrell Ingram | September 3, 2020 | October 2, 2020 |
| TT13 – (702) 275-6703 | Jimmy Carter | September 3, 2020 | October 2, 2020 |
| TT14 – (206) 898-8457 | Jamar Howard | September 3, 2020 | October 2, 2020 |
| TT16 – (206) 898-4155 | Larry Collins | September 3, 2020 / February 8, 2021 | October 2, 2020 / March 9, 2021 |
| TT19 – (206) 915-6994 | David Kelley | September 3, 2020 / October 23, 2020 | October 2, 2020 / November 21, 2020 |
| TT20 – (206) 397-7007 | Jimmy Carter | September 3, 2020 | October 2, 2020 |
| TT30 – (404) 988-2897 | Kefentse Olabisi | October 23, 2020 | November 21, 2020 |

AFFIDAVIT OF SHAWNA MCCANN – 5
USAO #2019R01083

| TT39 - 206-231-8368 | Curtis Snipes | October 23, 2020 | November 2, 2020[2] |
| TT43 - 253-331-0358 | Yusef Parrish | October 23, 2020 | November 21, 2020 |
| TT23 - 206-280-9706 | Eugene McGee | February 8, 2021 | March 9, 2021 |

13.     During this investigation, investigators intercepted thousands of drug-related conversations and text messages. In this Affidavit, I discuss some of these intercepted calls and text messages. Communications occurred in English. A combination of agents, task force officers, detectives, and professional staff have listened to these calls and summarized their content. I have relied upon the written summaries (line sheets and transcripts) prepared by the monitors for the description of the calls referenced below, and I have also personally listened to the calls. I know through training and experience, including experience with this investigation, that individuals involved in the distribution of controlled substances and other criminal activity often use coded communications when referring to their illegal activity. I have used this training and experience, as well as the training and experience of other experienced law enforcement officers familiar with this investigation who have reviewed these summaries and have listened to the calls, to explain what I believe to be an accurate interpretation for these coded communications, which are included in brackets in this Affidavit.

14.     In this Affidavit, I discuss some of the pertinent portions of intercepted calls and generally do not include the entire intercepted conversation. I indicate where possible the parties who were intercepted on the call. In so doing, I often rely on voice recognition/comparison by myself, other agents, and/or the monitors. For example, if we have identified an individual as the user of a particular phone (through use of a ruse call, surveillance/GPS, etc.), and that person starts using a different phone, we will typically recognize the voice of that person when using the new phone.

---

[2] On October 28, 2020 and October 30, 2020 investigators executed search warrants on three homes, three vehicles, and one person, all connected to Curtis Snipes and his associates. At the conclusion of the execution of these search warrants, collectively seven guns, six phones, more than $92,000, and approximately one quarter kilogram of cocaine was seized. One of the phones seized was TT39, used by Curtis Snipes. Because that phone came into police custody, interception was intentionally discontinued on November 2, 2020.

AFFIDAVIT OF SHAWNA MCCANN – 6
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15.     Some examples of coded terms used by members of the drug trafficking organization being investigated, referred to as the "Michael Walker DTO" for the reasons described below, include "hard," "heezy," and "heezard" (crack cocaine); "soft," "seezy," and "seezoft" (powder cocaine); and "fire" (often marijuana, but also used to describe high potency of cocaine). Some terms to indicate quantity have been "nino," "neen," or "nina" (nine ounces of cocaine); "baby" (four and a half ounces of cocaine); "half" or "heezy" (half ounce); "ball" (eightball referring to one-eighth of an ounce); and "queezy" (quarter-ounce). Drug customers are often referred to as "jug" or "joog."

16.     DTO members also use the word "need" and "on" to convey the desire to be supplied with drugs. DTO members often say, "I need to see you," "I need you," "I need on" to arrange a drug transaction. Oftentimes when this is said, no other discussion occurs regarding amounts or prices. Based upon my training and experience, I believe the expected transaction is already known by both parties because of the length of time and frequency the parties have been dealing with each other.

17.     Context is also important in interpreting coded language; for example, when someone says "one" is selling for "14-5," that indicates that the speaker is discussing an ounce of cocaine for $1,450. Based on my training and experience, including during this investigation, I am familiar with current and recent price ranges of drugs in the Seattle area, which depends on quality; I know that an ounce of cocaine can cost anywhere from $1,100 to $2,000 per ounce. The price has fluctuated significantly over the last year, due at least in part to the global pandemic and its effect on the ease of transporting goods and crossing borders. Additionally, price is affected by the volume, such that larger amounts are sold at some discount as compared to smaller amounts.

18.     In this Affidavit, I am seeking authority to search locations and vehicles associated with drug distributors. To give perspective as to the amount of drugs being distributed, and because most of the distribution in this investigation centered on cocaine, I will draw the distinction as to user amounts and distributor amounts of this drug based upon my training, experience, and knowledge of this investigation.

AFFIDAVIT OF SHAWNA MCCANN – 7
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   19.    Crack cocaine is often sold on the street in the open-air drug markets of the Seattle

2   area. Street dealers often sell $10 or $20 rocks or wafers of crack cocaine to users. These

3   rocks are often .1 or .2 grams of cocaine each. User amounts of cocaine also includes

4   "teeners" (1/16 of an ounce or 1.75 grams), single grams, and "eight balls" (1/8 of an

5   ounce or 3.5 grams). Street dealers themselves may be supplied quarter-ounce (7 grams),

6   half-ounce, and ounce (28 grams) quantities or more. Currently, when purchasing an

7   ounce of cocaine, the price is around $1,400 to $1,800, give or take a couple of hundred

8   dollars. Often those purchasing multiple ounces or more of cocaine are distributing to

9   other distributors. Larger amounts of cocaine and associated prices are discussed

10  throughout this Affidavit.

11              **SUMMARY OF THE INVESTIGATION**

12  20.    Investigators believe Michael Walker to be a trafficker of narcotics in this

13  District. To summarize, according to historical reports, Michael Walker has been a

14  subject or person of interest in drug investigations at least as far back as 2016, including

15  reports of Michael Walker making trips to and from Los Angeles to pick up narcotics and

16  supplying cocaine to numerous individuals. In 2019, two separate individuals stated they

17  had purchased cocaine from Michael Walker and/or Michael Walker's associates,

18  Maghan Stenson, Stevie Allen, and Jamaal Davis, on several occasions in the past.

19  21.    Based upon historical confidential source information, investigators

20  identified Michael Walker as a large-scale cocaine source of supply and also a source of

21  supply of marijuana. Information provided by confidential sources, the use of traditional

22  investigative techniques, and the use of wiretaps have led to the identification of

23  numerous individuals suspected to be involved with the drug trafficking and money

24  laundering activities of Michael Walker. Investigators refer to this network of suspected

25  drug traffickers as the Michael Walker Drug Trafficking Organization (DTO).

26  22.    Many of the target subjects and their associates have affiliation with

27  Seattle-area gangs, predominantly those originating from the Central District

28  neighborhood of Seattle. These gangs include, but are not limited to, Union Street Black

AFFIDAVIT OF SHAWNA MCCANN – 8
USAO #2019R01083

1  Gangster Disciples (BGD), Deuce 8 BGD, and other local Crip and Blood gangs.
2  Because of these associations, investigators believe that the Michael Walker DTO may be
3  a significant source of supply of drugs being distributed by these gangs. Many involved
4  with these gangs have been investigated for crimes ranging from street-level narcotics to
5  robbery, shootings, and murder. Many target subjects and associates have long-standing
6  relationships with others engaged in criminal activity. Many of these relationships span
7  decades.

## SUMMARY OF PROBABLE CAUSE

9      23.     During this investigation, based on physical surveillance, remote video
10  surveillance, GPS location data for Jerrell Ingram's cell phone (TT12) (identification
11  discussed below), and a mail cover, agents identified Jerrell Ingram's prior residence as
12  12813 66th Avenue South, Seattle, Washington (Subject Premises 22), his current
13  residence as Days Inn Hotel, Room 220, 19015 International Boulevard S, SeaTac,
14  Washington (**Subject Premises 52**), and his vehicle as a blue Dodge Grand Caravan
15  bearing Washington license plate BQJ5361 registered to Cecilia A. Turner at Subject
16  Premises 22 (**Subject Vehicle 51**).

17      24.     Pursuant to a warrant, agents obtained GPS location data on Jerrell
18  Ingram's cell phone TT12 from July through September 2020, which showed that Jerrell
19  Ingram remained at Subject Premises 22 overnights from July 2020 to September 2020.
20  Agents learned from a local police report that there was an accidental fire at Subject
21  Premises 22 in or about November 2020, with the likely cause an indoor marijuana grow
22  as the source of the fire. Investigators with the local police observed that the fire damage
23  at Subject Premises 22 extended to burns to over half of the residence. In April 2021,
24  agents obtained another warrant for renewed GPS location data on TT12 and determined
25  that Jerrell Ingram was staying at a room in the Days Inn Hotel in SeaTac, Washington
26  (**Subject Premises 52**).

27
28

AFFIDAVIT OF SHAWNA MCCANN – 9
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**A.      Jerrell Ingram's Drug Trafficking Activities**

25.      Based on intercepted communications on TT6[3] used by Kevin Gipson, agents obtained a court-authorized wire and electronic communications interception on TT12 used by Jerrell Ingram. During this investigation, and specifically the period of wire and electronic communications interception, agents intercepted communications and/or observed Jerrell Ingram conducting multiple cocaine and other narcotics transactions on a daily to weekly basis.

26.      On August 1, 2020, at approximately 11:02 a.m., GPS location data for TT12 indicated Jerrell Ingram was in the vicinity of Subject Premises 22. At approximately 11:15 a.m., agents observed a white 2020 Ford Fusion bearing California license plate 8MEU299 registered to Enterprise Rental parked in the driveway at Subject Premises 22. Based on information provided by Enterprise Rental, agents identified the renter of the white Ford Fusion as Cecilia Turner. At approximately 11:21 a.m., agents observed the white Ford Fusion leave Subject Premises 22 At approximately 2:23 p.m., GPS location data for TT12 indicated Jerrell Ingram was in the vicinity of Des Moines Memorial Drive South and South 112th Street in Seattle. Around that same time, agents observed the white Ford Fusion pull into the 7-Eleven parking lot at 11657 Des Moines Memorial Drive South in Seattle. Agents identified the driver of the white Ford Fusion as Jerrell Ingram, based on a comparison to his driver's license photograph. Agents do not know the nature of the relationship between Cecilia Turner and Jerrell Ingram; however, Jerrell Ingram resided at Subject Premises 22 and listed Subject Premises 22 as his residence on his driver's license, which is also the listed residence of Cecilia Turner on her driver's license.

---

[3] Agents obtained a search warrant for GPS location data for TT6 and identified its user as Kevin Gipson based on observing him, identified based on a comparison to his driver's license photograph, in the vicinity of the GPS ping radii for TT12 and multiple different locations and times. Agents also obtained a wiretap for TT6 and further confirmed the user was Kevin Gipson based on callers referring to the user of TT6 as "KG" and "Mr. Gipson."

AFFIDAVIT OF SHAWNA MCCANN – 10
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

27.     On August 4, 2020, at approximately 5:21 p.m., investigators intercepted a phone conversation between Kevin Gipson using TT6and Jerrell Ingram using TT12. During the call, Jerrell Ingram discussed selling Kevin Gipson a "half [ounce of cocaine]" and that he was "pulling up in back." (Session 3998.) Agents believed Jerrell Ingram had just pulled up in the alley behind Kevin Gipson's apartment in Seattle. At approximately 5:25 p.m., agents observed a white 2020 Ford Fusion bearing California state license plate number 8MEU299, registered to Enterprise Rental and rented by Cecilia Turner, in the alley directly behind Kevin Gipson's apartment. As discussed above, agents had observed Jerrell Ingram driving the same vehicle on prior physical surveillance on August 1, 2020. Agents believe during this meeting, Jerrell Ingram supplied Kevin Gipson with a half-ounce of cocaine.

28.     On August 6, 2020, at approximately 11:03 a.m., GPS location data for TT12 indicated Jerrell Ingram was in the vicinity of Subject Premises 22, and agents observed the same white 2020 Ford Fusion bearing California license plate 8MEU299, rented by Cecilia Turner, parked in the driveway. At approximately 1:07 p.m., agents observed the white Fusion leave Subject Premises 22. Agents attempted to follow the white Fusion and lost sight of it a short time later. At approximately 2:03 p.m., GPS location data for TT12 indicated Jerrell Ingram was in the vicinity of Kevin Gipson's residence in Seattle. A short time later GPS location data for TT12 indicated Jerrell Ingram was traveling to North Seattle. At approximately 2:05 p.m., investigators intercepted an incoming call to Kevin Gipson using TT6 from Jerrell Ingram at TT12. (Session 4198.) During the call, Kevin Gipson told Jerrell Ingram that, "these N* [drug customers] are complaining left and right [about quality of narcotics]." Jerrell Ingram said, "man I wish I would have come got that [bad quality narcotics] sooner…let me know what happens because I got some the other way right now [powder cocaine], and I'm waiting on something that's supposed to be coming in today [narcotics re-supply]." Kevin Gipson asked, "what you got some soft [powder cocaine]?" Jerrell Ingram said, "yeah…and some other shit is coming back that you can do the other way [cook into

crack cocaine]. I just be taking it [narcotics] how I be getting it from these fools [from supplier], you know . . . and somebody [supplier] just threw that [bad quality narcotics] in on the top of something else [other narcotics] and said 'just take this too.'" Kevin Gipson complained, "that's a high price for some [bad quality narcotics], uh, man, damn!" Agents sent surveillance units to North Seattle to locate Jerrell Ingram using the GPS data from TT12. At approximately 1:40 p.m., agents observed the white Fusion southbound on Aurora Avenue North at North 135th Street in Seattle. Agents identified Jerrell Ingram as the driver of the white Ford Fusion based on a comparison to his driver's license photograph and observed an unknown male in the front passenger seat. Investigators lost sight of the white Ford Fusion a short time later. At approximately 3:58 p.m., GPS location data for TT12 indicated Jerrell Ingram was in the vicinity of the Dancing Bare, an adult entertainment club at 10338 Aurora Avenue North in Seattle. Investigators arrived a short time later and saw the white Ford Fusion parked in the alley near the business. At approximately 5:20 p.m., GPS location data for TT12 indicated Jerrell Ingram had left the area and was in South Seattle. At approximately 6:11 p.m., GPS location data for TT12 indicated Jerrell Ingram was at Subject Premises 22. Agents drove by that location and saw the white Ford Fusion in the driveway, indicating that Jerrell Ingram is the user of TT12.

29.    On September 4, 2020, at approximately 8:17 p.m., Jerrell Ingram using TT12 received a call from an unknown male at phone number (206) 372-2453 (referred to as UM2453). (Session 397.) During this call, Jerrell Ingram said that he was "moving around" and was "about to stop by my house right now and grab it for you. I got a different flavor, I got to get the better one that you want at the house." UM2453 said "ok" and agreed to "come that way" to Jerrell Ingram to make it faster. Based on my training and experience, I believe Jerrell Ingram agreed to sell drugs to UM2453 but said he had to stop by his house, Subject Premises 22, to pick up the type of drugs that UM2453 liked.

AFFIDAVIT OF SHAWNA MCCANN – 12
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

30.     On September 6, 2020, at approximately 10:04 p.m., Jerrell Ingram using TT12 received a call from an unknown male using phone number (253) 334-9035 (referred to as UM9035). (Session 723.) During the call, UM9035 asked if Jerrell Ingram "had any of the other ones [blue pills] or do you still just have the white ones [pills]." Jerrell Ingram responded that he just has "the white ones [pills] right now . . . I just missed the blue ones [pills] this month." UM9035 asked what he "owes" Jerrell Ingram right now, and Jerrell Ingram said, "half a ticket, half a meal ticket." UM9035 said Jerrell Ingram gave him "three [pills]" last time, and Jerrell Ingram said, "ok we can do that." UM9035 said that he will not be able to pay what he owes Jerrell Ingram until Wednesday. Jerrell Ingram asked if UM9035 had "the money for the ones [pills] you want right now." UM9035 said, "not really but I can try and scrounge up something here." Jerrell Ingram said, "you for sure got to come get them if you ain't got it" and confirmed that he was at home. On September 6, 2020, at approximately 10:34 p.m., Jerrell Ingram using TT12 received a call from UM9035. (Session 735.) During the call, Jerrell Ingram said he was at the house and told UM9035 "to come on." UM9035 asked for directions to Jerrell Ingram's house coming from Kent, Washington; Jerrell Ingram told UM9035 to "drive straight through until you get to the AM/PM at Boeing field and take a left up the hill….and then when you get up the hill take a left on 128th and go all the way to the dead end." Based on my training and experience, I believe that UM9035 asked for three white narcotics pills (likely oxycodone or another, related opioid) from Jerrell Ingram after learning that Jerrell Ingram did not have any of the blue narcotics pills (possibly illicitly manufactured oxycodone pills laced with fentanyl. Jerrell Ingram told UM9035 that he would sell UM9035 three white narcotics pills but UM9035 had to come to Jerrell Ingram's house to buy the pills since UM9035 did not have the money to pay off his narcotics debt, and Jerrell Ingram provided UM9035 with direction on how to get to his house, Subject Premises 22. These instructions accurately described how to get to Subject Premises 22.

AFFIDAVIT OF SHAWNA MCCANN – 13
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

31.     On September 25, 2020, agents intercepted several calls between David Kelley using TT19[4] and Jerrell Ingram using TT12. During one of the calls, Jerrell Ingram asked David Kelley for a "little H." (Session 5412.) Based on previous intercepted communications, agents believed Jerrell Ingram was requesting a half ounce of cocaine from David Kelley. Jerrell Ingram and David Kelley attempted to meet that night and later changed the meeting to the next day. On September 26, 2020, at approximately 11:39 a.m., agents intercepted a call between David Kelley using TT19 and Jerrell Ingram using TT12. (Sessions 5865 and 5856.) Jerrell Ingram asked if David Kelley was in the area to meet him, indicating he was ready for David Kelley to supply him with the half-ounce cocaine; David Kelley and Jerrell Ingram agreed to meet at the gas station around the corner from Jerrell Ingram's residence (Subject Premises 22). At approximately 11:53 a.m., agents observed David Kelley's silver Infiniti Q80 parked at the gas pumps and David Kelley sitting in the front passenger seat of a purple 1998 Dodge Ram, Washington license C00234M with Jerrell Ingram (identified based off a comparison to his driver's license photograph) in the driver's seat. Agents observed David Kelley (identified based off a comparison to his driver's license photograph) get out of Jerrell Ingram's purple Ram within a minute and watched David Kelley and Jerrell Ingram drive off in their respective vehicles. At approximately 12:12 p.m., agents intercepted another call between David Kelley using TT19 and Jerrell Ingram using TT12. (Session 5877.) David Kelley and Jerrell Ingram agreed to meet again at Jerrell Ingram's residence, Subject Premises 22. The next GPS location data for TT12 and TT19 indicated they were both in the vicinity of Subject Premises 22.

---

[4] Agents obtained a search warrant for GPS location data for TT19 and identified its user as David Kelley based on observing him, identified based on a comparison to his driver's license photograph, in the vicinity of the GPS ping radii for TT19 and multiple different locations and times. Agents also obtained a wiretap for TT19 and further confirmed the user was David Kelley based on callers referring to the user of TT19 as "David Kelley."

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32.     On November 9, 2020, agents conducted a search of David Kelley's residence and vehicle, based on federal search warrants, and seized more than a kilogram of cocaine, digital scales, over $55,000 in cash, six firearms, and a money counter.

**B.     Arrest of Jerrell Ingram at Subject Premises 52 in Subject Vehicle 51.**

33.     On March 17, 2021, the Honorable Mary Alice Theiler, United States Magistrate Judge for the Western District of Washington, signed a search warrant with integrated pen-register/trap and trace orders authorizing the tracking of three phones, including TT12.  On March 22, 2021, the Honorable Mary Alice Theiler, United States Magistrate Judge for the Western District of Washington, signed a search warrant for the use of a cell site simulator to locate TT12.  After Jerrell Ingram's primary residence caught fire in or around November 2020, GPS location data for TT12 in April 2021 showed that Jerrell Ingram frequently stayed at a room in the Days Inn Hotel in SeaTac (**Subject Premises 52**).

34.     Jerrell Ingram was indicted in this District on March 31, 2021 for conspiracy to distribute controlled substances, and an arrest warrant was issued for Jerrell Ingram.

35.     On April 7, 2021, agents conducted physical surveillance at the Days Inn Hotel in SeaTac. At this time, GPS location data for TT12 put Jerrell Ingram at this hotel. Later that morning, agents observed Jerrell Ingram exit this hotel and open the door to get into a blue Dodge Grand Caravan bearing Washington license plate BQJ5361 (**Subject Vehicle 51**). At that point, agents arrested Jerrell Ingram. During a search incident to arrest, agents located a small amount of marijuana, a hotel key, and keys to **Subject Vehicle 51** on Jerrell Ingram's person. Agents had a trained narcotics K9 conduct a sniff of the exterior of **Subject Vehicle 51**, and the handler observed the trained K9 give a positive alert to the presence of narcotics in **Subject Vehicle 51.**

36.     After taking Jerrell Ingram into custody, agents spoke with the on-site hotel staff and asked them to identify the room in which Jerrell Ingram was staying. The hotel employee ran Jerrell Ingram's name in their computer system and advised agents that

1  Jerrell Ingram was staying in Room 220 (**Subject Premises 52**) and had prepaid for
2  several days.

3       37.    I know based on my training and experience, that drug traffickers
4  frequently keep their narcotics, narcotics proceeds, and firearms in their residences,
5  vehicles, and stash locations in order to protect their supply and to have the narcotics on
6  hand for transactions. I also know that drug traffickers maintain records and other
7  trafficking-related materials in their premises, including residences, for a long period of
8  time, including current and prior cell phone devices that contain text messages and
9  contact lists of drug trafficking associates and pay-owe sheets. Based on the above-
10 referenced intercepted communications, there is probable cause to believe that Jerrell
11 Ingram is a drug trafficking and that Jerrell Ingram likely keeps his narcotics supply and
12 proceeds in **Subject Premises 52** and **Subject Vehicle 51**.

13                   **KNOWLEDGE BASED ON TRAINING AND EXPERIENCE**

14      38.    Based upon my training and experience, and my discussions with other
15 experienced officers and agents involved in drug investigations, I know the following:

16            a.     Traffickers of controlled substances, and those who assist them,
17      maintain and tend to retain accounts or records of their drug trafficking activities,
18      including lists of drug quantities and money owed (pay-owe sheets), telephone
19      records including contact names and numbers, photographs, and similar records of
20      evidentiary value. These items are generally kept in locations where drug
21      traffickers believe their property is secure and will remain undetected from law
22      enforcement, such as inside their homes, vehicles, storage lockers, and businesses.

23            b.     Traffickers of controlled substances commonly maintain records
24      reflecting names or nicknames, addresses, and/or telephone numbers of their
25      suppliers, customers and associates in the trafficking organization. Traffickers
26      commonly maintain this information in books or papers as well as in their cellular
27      telephones. Traffickers often maintain cellular telephones for ready access to their
28      clientele and to maintain their ongoing drug trafficking. Traffickers often change

AFFIDAVIT OF SHAWNA MCCANN – 16
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

c.       Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences, vehicles, and storage lockers. This evidence often includes not only contraband and paraphernalia, but also financial records, records of property and vehicle ownership, records of property rented, and other documentary evidence relating to their crimes. Drug traffickers sometimes take or cause to be taken photographs and/or video recordings of themselves, their associates, their property, and their illegal product. These individuals often maintain these photographs and recordings in their possession or at their premises.

d.       During the execution of search warrants, it is common to find papers, letters, billings, documents, and other writings which show ownership, dominion, and control of vehicles, residences, and/or storage units.

e.       Persons trafficking and using controlled substances commonly sell or use more than one type of controlled substance at any one time.

f.       Traffickers frequently maintain items necessary for weighing, packaging, and cutting drugs for distribution. This paraphernalia often includes, but is not limited to, scales, plastic bags and cutting/diluting agents and items to mask the odor of drugs.

g.       It is common for drug dealers to also be users of their product, and that it is common for the drug user to maintain paraphernalia associated with the use of controlled substances.

h.       Traffickers frequently maintain records, books, notes, ledgers, travel documents, and other papers relating to the transportation and distribution of controlled substances, including travel records, in locations convenient to them, such as their residences and vehicles.

AFFIDAVIT OF SHAWNA MCCANN – 17
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

i.      Traffickers frequently keep on hand amounts of United States currency in order to maintain and finance their ongoing narcotics business. They commonly deal in currency because of its untraceable nature. They sometimes convert their illicit currency into currency equivalents such as cashier's checks and money orders. Traffickers often conceal in secure locations such as their residences and vehicles currency, financial instruments, precious metals, jewelry, and other items of value which are the proceeds of drug transactions, and evidence of consequential financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking activities, and financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, and other records showing the management of such assets. Traffickers often have money counters.

j.      Traffickers often maintain weapons, including guns, ammunition, and body armor, in secure locations such as their residences and vehicles, in order to protect their drugs and drug proceeds.

k.      Traffickers often have false identification documents and identification documents in the names of others in order to conceal their identities.

l.      Traffickers very often place assets in names other than their own, or use fictitious names and identification, to avoid detection of these assets by government agencies, and that even though these assets are in other persons' names, the drug dealers actually own and continue to use these assets and exercise dominion and control over them.

m.      Illegal drug trafficking is a continuing activity over months and even years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale and, similarly, such drug traffickers will have an "inventory" which will fluctuate in size depending upon various factors to

AFFIDAVIT OF SHAWNA MCCANN – 18
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

include the demand and supply for the product. I would expect the trafficker to keep records of his illegal activities for a period of time extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example, he might still be owed money, or might owe someone else money. These records are often created in code.

39.     As noted above, drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since cellular phone use became widespread, every drug dealer I have contacted has used one or more cellular telephones for his or her drug business. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

a.      The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify

AFFIDAVIT OF SHAWNA MCCANN – 19
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  contacts by this telephone with other cellular telephones used by co-conspirators,

2  to identify other telephones used by the same subscriber or purchased as part of a

3  package, and to confirm if the telephone was contacted by a cooperating source or

4  was intercepted on a wiretap here or in another district.

5          b.       The stored list of recent received calls and sent calls is important

6  evidence. It identifies telephones recently in contact with the telephone user. This

7  is valuable information in a drug investigation because it will identify telephones

8  used by other members of the organization, such as suppliers, distributors, and

9  customers, and it confirms the date and time of contacts. If the user is under

10 surveillance, it identifies what number he called during or around the time of a

11 drug transaction or surveilled meeting. Even if a contact involves a telephone user

12 not part of the conspiracy, the information is helpful (and thus is evidence)

13 because it leads to friends and associates of the user who can identify the user,

14 help locate the user, and provide information about the user. Identifying a

15 defendant's law-abiding friends is often just as useful as identifying his drug-

16 trafficking associates.

17         c.       Stored text messages, emails, and any social media content/messages

18 (like Facebook messenger) are important evidence, similar to stored numbers.

19 Agents can identify both drug associates, and friends of the user who likely have

20 helpful information about the user, his location, and his activities.

21         d.       Photographs and video recordings on a cellular telephone, including

22 metadata, are evidence because they help identify the user, either through his or

23 her own picture/video, or through pictures/videos of friends, family, and associates

24 that can identify the user and the locations the user has been. Pictures/videos also

25 identify associates likely to be members of the drug trafficking organization. Some

26 drug dealers photograph/video groups of associates, sometimes posing with

27 weapons and showing identifiable gang signs. Also, digital photos often have

28 embedded "geocode" or GPS information embedded in them. Geocode

AFFIDAVIT OF SHAWNA MCCANN – 20
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

e.      Stored web browsing history is important evidence because it shows the user's activities and places of interest, including if the user looked up addresses, restaurants, and other businesses on a web browser on the cell phone, which can show where coconspirators meet, where they travel, and where assets might be located. Moreover, through web browsing history, a user can also access or look up associates or coconspirators on social media, which is valuable information in a drug investigation because it will identify members of the organization, such as suppliers, distributors and customers.f.   Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

g.      Stored data in money transfer applications, such as Venmo and CashApp, are important evidence because they show from whom and to whom the user is sending money. In the era of digital currency and online money transfers, I know based on my training and experience, and intercepted communications during this investigation that drug traffickers, and specifically drug traffickers within the Michael Walker DTO, use Cash App and other money transfer applications to pay for drug products in lieu of physical cash. Accordingly, any stored data on money transfer applications on cell phones can show the user's drug trafficking associates, customers, and other connections.

h.      Stored location data, including from any map applications on the cell phone, are important evidence because the data can show where the user has been, including addresses of residences and business parking lots, which can show stash

1  house locations, drug transaction meeting locations, or the addresses of a drug

2  trafficker's associates, customers, or suppliers.

3  **CONCLUSION**

4  40.    Based on the above-described information, there is probable cause to

5  believe that contained within the location and vehicle, described in Attachments A1 and

6  A2, there exists evidence, fruits, and instrumentalities, as described in Attachment B, of

7  violations of 21 U.S.C. §§ 841 and 846 (distribution of, and possession with intent to

8  distribute, controlled substances, and conspiracy to do the same), and 21 U.S.C. § 843(b)

9  (use of communication facilities to commit, facilitate, or further an act or acts which

10 constitute a felony), committed by Jerrell Ingram aka Rel.

_____
Shawna McCann, Affiant
Special Agent, FBI

16 The above-named agent provided a sworn statement to the truth of the foregoing

17 affidavit by telephone on the 7th day of April, 2021.

_____
THE HONORABLE MARY ALICE THEILER
United States Magistrate Judge

AFFIDAVIT OF SHAWNA MCCANN – 22
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970